1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                              )
BIJAN NIKFARD,                                    )          No. C19-6001RSL
                                                              )
                              Plaintiff,              )
                                                              )
              v.                                         )
                                                              )          ORDER DENYING STATE FARM'S
STATE FARM FIRE AND CASUALTY         )          MOTION FOR PARTIAL
COMPANY,                                             )          SUMMARY JUDGMENT
                                                              )
                              Defendant.           )
_____)

        This matter comes before the Court on "Defendant State Farm's Motion for Partial

Summary Judgment." Dkt. # 55. State Farm seeks dismissal of plaintiff's Insurance Fair Conduct

Act ("IFCA"), injunctive relief, and negligence claims. Summary judgment is appropriate when,

viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of

material fact that would preclude the entry of judgment as a matter of law. The party seeking

summary dismissal of the case "bears the initial responsibility of informing the district court of

the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to

particular parts of materials in the record" that show the absence of a genuine issue of material

fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to

summary judgment if the non-moving party fails to designate "specific facts showing that there

is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence

in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that

ORDER DENYING STATE FARM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT

party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018).

Although the Court must reserve for the trier of fact genuine issues regarding credibility, the

weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence

in support of the non-moving party's position will be insufficient" to avoid judgment. *City of*

*Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome

of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts*

*Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should

be granted where the nonmoving party fails to offer evidence from which a reasonable fact

finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071

(9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[1] and

taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

On March 10, 2019, there was a fire at a house owned by plaintiff[2] and insured by State

Farm. State Farm acknowledged that the loss was covered by the policy and sent "a licensed

general contractor specializing in insurance restoration," KenCade Construction, to the house to

prepare a repair estimate. Dkt. # 55 at 2. KenCade developed a very detailed, but preliminary,

---

[1] The ESI report, Dkt. # 60-5 at 3-25, has been considered as evidence of the hiring of an industrial hygienist and as a record of the types of evaluations performed. It has not been considered for the truth of the matters asserted therein. George Nikfard's statement regarding Kellie Kleinschmidt's statements, as reported by Pamela Gates, are hearsay and have not been considered.

[2] The Court uses the term "plaintiff" to refer to both the property owner and named plaintiff, Bijan Nikfard, and his brother, George, who acted as his representative in communicating with State Farm, the insurance agent, and the various contractors.

ORDER DENYING STATE FARM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT          -2-

estimate of the replacement cost value as $149,900.36. Dkt. # 56-1 at 15-34.[3] The estimate did not include more than a nominal amount for flooring and it did not include the costs associated with water loss mitigation, structural engineering, mold evaluation/abatement, or permitting, Dkt. # 60-6 at 23, 26, 29-32.[4] Plaintiff obtained a competing repair estimate of $269,850.00 plus tax from Ivan's Remodeling. Dkt. # 57-1 at 50-52. State Farm discussed this estimate with plaintiff, but rejected the bid because items such as "replacement of all windows and siding, painting the exterior, adding tile and carpet that were not in the house, and replacing the rear deck" were upgrades and/or not necessary to repair the fire damage. Dkt. # 57 at ¶ 5. On May 19, 2019, State Farm sent plaintiff checks in the amount of $113,167.93 (which it represented to be the replacement cost value less an allowance for depreciation based on the age and general condition of the house) with a promise of an additional $46,848.09 if the repairs were actually completed within the time allowed by the policy. Dkt. # 57-1 at 2. Plaintiff was notified that if he obtained a repair estimate that exceeded that which State Farm used to make its payment, he should contact State Farm before beginning work.

In response to an inquiry regarding the loss settlement provisions of the insurance policy, State Farm provided the relevant policy language and explained how the replacement cost coverage works. State Farm assured plaintiff that the KenCade estimate for repairs was

---

[3] The individual who worked up the estimate, Eric Irvin, had no construction experience but had been trained to gather and input the information that a software program called Xactimate needed to calculate labor and material expenses. Although Mr. Irvin was unaware of local construction prices, Xactimate was updated monthly to reflect any changes, and the owner of KenCade would periodically review the pricing information. Dkt. # 60-6 at 17-18.

[4] State Farm asserts that KenCade was willing to do the repair and renovation work for the amount of its estimate. Dkt. # 55 at 3. There does not appear to be any evidence to support that assertion. Mr. Irvin made clear at his deposition that there was a difference between an estimate and a bid. Only a bid is an offer to enter into a contract to do the work for a certain amount of money, and KenCade was never asked to prepare a bid for the Nikfard project. Dkt. # 60-6 at 28-29.

ORDER DENYING STATE FARM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT            -3-

sufficient to restore the property to its pre-loss condition based on KenCade's inspection. If,

however, other damages were discovered during demolition or repair, those damages would "be

addressed as they are discovered." Dkt. # 57-1 at 55-56. Plaintiff was reminded that he should

contact State Farm before beginning or authorizing any repairs that would cost more than the

KenCade estimate. Dkt. # 56-1 at 56.

On June 7, 2019, plaintiff notified State Farm that he would be moving forward with the

repairs based on the Ivan's Remodeling estimate which State Farm had previously rejected.

Plaintiff requested that State Farm, the contractor, and plaintiff meet "at the property to discuss

all line items and make sure we are all on the same page going forward." Dkt. # 60-7 at 12. State

Farm responded a few days later noting that there was a copy of the estimate in the file and that

the replacement cost benefits payment would be released once the contract was signed. Dkt.

# 60-8 at 4. There was no mention of a site visit, nor did State Farm acknowledge that the two

estimates were over $100,000 apart. Plaintiff responded the next morning with a series of

questions:

> Would the replacement cost benefits payment cover the actual costs of completing the
> project or only the $46,848.09 that was mentioned in prior correspondence?
>
> Plaintiff contacted State Farm to get authorization for repairs that exceeded the estimate
> State Farm obtained (as directed in the prior correspondence). Was State Farm
> agreeing to pay the amount necessary to complete the repairs or would it like to
> meet with the contractor and plaintiff to go through the anticipated costs before
> committing to pay the contractor's expenses?
>
> If unforeseen costs arose, how should requests for authorization and payment be handled?
> In particular, the contractor recently discovered that "the dwelling is rodent
> infested and now requires exterminator services to be added to the bid. [Does State
> Farm] authorize this?"

Plaintiff requested a response by the end of the day. Dkt. # 60-8 at 2-3. The following evening,

June 13, 2019, plaintiff again contacted State Farm, confirming that he planned to pay for work

not related to the fire out of pocket but asserting that the two bids diverged so greatly with

regards to the reconstruction activities covered by the policy that he needed a meeting to

ORDER DENYING STATE FARM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT          -4-

determine how to proceed. Plaintiff took the position that State Farm's estimate "was produced with software on the very lowest spectrum possible" and did not generate "a realistic bid in replacing any of the damages." *Id.* There is no indication that State Farm ever responded.

Plaintiff filed this lawsuit on September 17, 2019. He subsequently obtained reports or assistance from an industrial hygienist regarding asbestos, mold, and smoke sealing (Dkt. # 60-5 at 3-25; Dkt. # 60-6 at 42), a structural engineer to inform the scope of work (Dkt. # 60-10 at 3; Dkt. # 60-14 at 2-9), an architect (Dkt. # 62-1 at 2), and a water loss mitigation specialist (Dkt. # 62-5 at 5; Dkt. # 60-15 at 3-16). On December 15, 2019, plaintiff signed a contract with Charter Construction, Inc. to restore the home for $228,563.91 and to perform certain upgrades for $11,432.34. Dkt. # 60-10 at 3-17.[5] State Farm made a payment of $60,904.01 upon receipt of a copy of the Charter Construction contract to cover the replacement cost benefits (apparently based on the KenCade estimate), material costs for laminate flooring, "Option OL - Code," and permit, architect, and engineer charges that were not related to litigation. Dkt. # 62-1 at 2-3. There is no indication that State Farm has paid the water loss mitigation invoice, the industrial hygienist's invoice, or contractor charges in excess of the KenCade estimate.

## DISCUSSION

### A. Insurance Fair Conduct Act ("IFCA")

IFCA authorizes "first party claimant[s] to a policy of insurance who [are] unreasonably denied a claim for coverage or payment of benefits by an insurer [to] bring an action in superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." RCW 48.30.015(1). State Farm argues that it acted reasonably in relying on an estimate from "a licensed general contractor willing to

---

[5] Charter Construction relied on Xactimate, "the most recognized estimating platform in the business," to develop its estimate for the Nikfard project. Dkt. # 62-3 at 3-5.

ORDER DENYING STATE FARM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT                -5-

do the work" and in rejecting plaintiff's higher estimate because it "was not limited to repair of fire damage." There are genuine issues of fact as to the reasonableness of State Farm's conduct in both respects. KenCade provided a preliminary estimate which did not include necessary items, such as water loss mitigation costs, structural engineering expenses, permitting fees, and flooring. There is no indication that KenCade was willing to, or had in any way committed to, perform the repairs for the $149,900.36 it quoted. Other than requesting that KenCade provide an estimate shortly after the fire, it does not appear that State Farm made any other effort to investigate or value the loss.[6] As for the competing bid from Ivan's Remodeling, even if 100% of the line items State Farm thought were unrelated to the fire were deducted from the bid, the reduction would be no more than $51,850. Thus adjusted, the bid was still almost $70,000 over the KenCade estimate, yet there is no indication that State Farm conducted any further investigation to determine the actual costs of repair or engaged its insured in an effort to understand the discrepancy. A reasonable fact finder could find that plaintiff was unreasonably denied payment of the benefits afforded by the policy.

In reply, State Farm argues that its decision to pay for repair costs based on KenCade's estimate "was not a final offer" and therefore cannot support an IFCA claim. No case law is provided in support of this argument. On the facts, it is unclear how plaintiff was supposed to intuit that the $113,167.93 check he received with a statement that "an additional amount of $46,848.09 is available to you for replacement cost benefits and may be claimed upon completion of the repairs" was not State Farm's best and final offer. State Farm rejected Ivan's Remodeling bid out of hand, making both the invitation to submit a higher bid for review and a vague promise that additional payments might be made if additional damage were discovered

---

[6] A State Farm representative visited the property once on April 22, 2019, to go over the KenCade estimate while walking through the house. Dkt. # 57 at ¶ 3.

ORDER DENYING STATE FARM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT            -6-

1   less than encouraging. A reasonable fact finder could conclude that, even if State Farm were

2   subjectively willing to make additional and higher payments in some circumstances, it left its

3   insured with the unenviable choice of having to enter into a contract for substantially more than

4   the insurer had said it would pay or to forego the repairs altogether. State Farm has not shown

5   that it is entitled to judgment as a matter of law on plaintiff's IFCA claim.

6   **B. Injunctive Relief**

7        Plaintiff asserts a claim for injunctive relief under Washington's Consumer Protection

8   Act ("CPA"), seeking an order enjoining State Farm from violating the insurance statutes and

9   regulations and requiring it to put in place procedures designed to ensure that State Farm "live[s]

10  up to its legal obligations . . . to policyholders." Dkt. # 24 at ¶ 37. Plaintiff asserts, and State

11  Farm does not dispute, that he is the named insured on four State Farm insurance policies and

12  that his family holds another nineteen State Farm policies. State Farm argues that injunctive

13  relief is unavailable because plaintiff lacks standing to pursue relief on behalf of the general

14  public and because plaintiff cannot show irreparable harm or the inadequacy of legal remedies.

15       The issue of standing turns on whether plaintiff faces a threat of imminent or actual harm

16  traceable to State Farm's conduct that can be redressed through an injunction. *Lujan v. Defense*

17  *of Wildlife*, 504 U.S. 555, 560-61 (1992) (noting that three "irreducible constitutional minim[a]

18  of standing" are injury-in-fact, causation, and redressability). The claimed injury does not have

19  to be significant as long as it is "concrete, particularized, and actual or imminent . . . ." *Monsanto*

20  *Co. v. Geertson Seed Farms*, 661 U.S. 139, 149 (2010). In the context of consumer protection

21  act claims involving false advertising, the Ninth Circuit has held "that a previously deceived

22  consumer may have standing to seek an injunction against false advertising or labeling, even

23  though the consumer now knows or suspects that the advertising was false at the time of the

24  original purchase" if she can show that she will be unable to rely on the product's advertising in

25  the future, causing her to forego a purchase she would like to make, or that she may purchase the

26

ORDER DENYING STATE FARM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT          -7-

1     product in the future, incorrectly thinking the product had been improved to match the

2     advertising. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018).

3            In this case, it appears that State Farm is still adjusting plaintiff's claim, that bills remain

4     unpaid, and that expenditures have not been authorized. Plaintiff therefore remains subject to

5     and impacted by State Farm's claims handling policies and procedures. Because the injuries of

6     which he complains may be redressable through injunctive relief (*Lujan*, 504 U.S. at 560-61), a

7     case or controversy exists between the parties, and plaintiff has Article III standing.[7]

8            State Farm argues that, because plaintiff has not explained why monetary damages would

9     be insufficient to redress the harm alleged and has not otherwise identified any irreparable

10    injury, he cannot obtain injunctive relief under the "well-established principles of equity"

11    governing such relief in federal court. Dkt. # 55 at 10. State Farm has not, however, shown that

12

13        [7] The Court declines to require a showing of irreparable harm as an element of Article III

14    standing. The case on which State Farm relies for such a requirement, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004), accurately quotes *Clark v. City of*

15    *Lakewood*, 259 F.3d 996, 1007 (9th Cir.2001), as follows: "Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical. In the context of injunctive

16    relief, the plaintiff must demonstrate a real or immediate threat of an irreparable injury." No

17    showing of irreparable harm was required in *Clark*, however. Rather, the Ninth Circuit allowed plaintiff's claim for injunctive relief to proceed based on his assertion that the offending city

18    ordinance rendered his business unprofitable. More importantly, *Clark* attributes this statement of law to *Cole v. Oroville Union High Sch.*, 228 F.3d 1092, 1100 (9th Cir. 2000), which in turn

19    cites *City of Los Angeles v. Lyons*, 461 U.S. 95, 110-11 (1983). *Cole* misinterpreted *Lyons*, however. The Supreme Court did not graft an irreparable injury element onto the standing

20    analysis in *Lyons*. It found that plaintiff lacked standing because he could not show a real and

21    immediate threat of future injury. *Id.* at 110 ("There was no finding that Lyons faced a real and immediate threat of again being illegally choked."). In an entirely different section of the

22    decision, the Supreme Court noted that, even if Article III standing were assumed, the claim for

23    injunctive relief would fail in the absence of a likelihood of irreparable injury. *Id.* at 111 ("Lyons

24    fares no better if it be assumed that his pending damages suit affords him Article III standing to seek an injunction as a remedy for the claim arising out of the October 1976 events. The

25    equitable remedy is unavailable absent a showing of irreparable injury . . .").

26

federal law governs this issue: this is a diversity action in which plaintiff seeks relief under state law. "Federal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law. . . . Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

RCW 19.86.090, which is the substantive basis for plaintiff's CPA claim, authorizes a civil action to enjoin further violations of the CPA upon proof of injury to business or property. The circumstances in which an injunction is available are specified, and they do not require a showing of irreparable harm.[8] Washington case law supports the conclusion that injunctive relief is available under the CPA even if "plaintiff could be made whole by a money judgment." *Hockley v. Hargitt*, 82 Wn.2d 337, 349-50 (1973) ("By the very language of the statute, plaintiff may obtain injunctive relief in addition to recovering actual damages" and enjoining future violations is appropriate "even if such violations would not directly affect the individual's own private rights.").[9] *See also Dix v. ICT Grp., Inc.*, 160 Wn.2d 826, 837 (2007) ("That the private right of action [under the CPA] is for the purpose of enforcement for the public as a whole is also demonstrated by the fact that a private consumer can obtain injunctive relief even if that injunction would not affect that particular consumer's private interests."); *Boldt v. Quick Collect,*

---

[8] The federal rule of procedure that governs requests for injunctive relief in federal court, Fed. R. Civ. P. 65, has no conflicting substantive provisions.

[9] The Court is aware that this reading of *Hockley* has not been universally accepted. *See Grant v. Unigard Indem. Co.*, No. C14-0198BJR, 2014 WL 12028484, at *5 (W.D. Wash. July 29, 2014) ("*Hockley* does not stand for the proposition that a plaintiff who lacks the prospect of individual future injury may nevertheless seek injunctive relief, and does not support Plaintiffs' contention that they may seek injunctive relief against the Johnsons in state court despite a lack of alleged personal future injury.").

ORDER DENYING STATE FARM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT         -9-

1  *Inc.*, No. 13-2-14613-0, 2015 WL 9851307, at *1 (Wn. Super. Dec. 21, 2015) (granting wide-

2  ranging injunctive relief without making any findings regarding irreparable injury). To apply

3  federal case law regarding injunctive relief to plaintiff's state law claims would encourage forum

4  shopping and risk the inequitable administration of the laws, the two evils *Erie* was meant to

5  defeat. *Hanna v. Plumer*, 380 U.S. 460, 468 (1965). "[W]here a federal court is exercising

6  jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the

7  litigation in the federal court should be substantially the same, so far as legal rules determine the

8  outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co. v. York*, 326

9  U.S. 99, 109 (1945). The fact that plaintiff's request for injunctive relief is defective under

10  federal law is insufficient to warrant summary dismissal of this state law claim.

11      In its reply memorandum, State Farm argues that plaintiff should be barred from seeking

12  injunctive relief because he failed to identify the form of relief he plans to request at trial. State

13  Farm has not shown that it requested this information in discovery or that plaintiff was otherwise

14  under an obligation to specify the relief sought.

15  **C. Negligent Claims Handling**

16      Washington courts recognize a cause of action for negligent claims handling. *See*

17  *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 198 Wn. App. 594, 616 (2017). State Farm argues

18  that this species of tort exists only in the third-party context, not in the first-party context

19  presented here. *Merriman* was a first-party insurance policy, however. Although State Farm

20  baldly asserts that it is not good law, at least four of the judges in this district disagree. *See*

21  *Gamble v. State Farm Mut. Auto. Ins. Co.*, C19-5956RJB, 2020 WL 6286816, at *3 (W.D.

22  Wash. Oct. 27, 2020) (J. Bryan, denying summary judgment in a first-party context); *Naxos, LLC*

23  *v. Am. Family Ins. Co.*, No. C18-1287JLR, 2020 WL 777260, at *23 (W.D. Wash. Feb. 18,

24  2020) (J. Robart, allowing a negligent claims handling claim to proceed in a claim involving a

25  first-party business owner's policy); *Hews v. State Farm Mut. Auto. Ins. Co.*, C15-0834RAJ,

26

ORDER DENYING STATE FARM'S MOTION
FOR PARTIAL SUMMARY JUDGMENT          -10-

1  2016 WL 3144397, at *2 (W.D. Wash. June 6, 2016) (J. Jones, claim to proceed in the

2  underinsured motorist context); *Grant*, 2015 WL 11233201, at *4 (J. Rothstein, allowing a claim

3  to proceed in a claim involving a first-party homeowner's policy).[10] That a first party insurer

4  does not owe the heightened duty of good faith that arises when an insurer controls the insured's

5  defense of a liability claim does not mean that it owes no duty. State Farm has not identified any

6  distinction between a first- and a third-party policy that would make a breach of duty actionable

7  in one context but not in the other.

8      State Farm seeks dismissal of the negligent claims handling claim on the alternative

9  ground that it is duplicative of plaintiff's bad faith claim. Although "[t]he analysis of a

10  negligence cause of action is essentially the same as that of a claim of bad faith," *Cardenas v.*

11  *Navigators Ins. Co.*, C11-5578RJB, 2011 WL 6300253, at *8 (W.D. Wash. Dec. 16, 2011)

12  (citing *Hamilton v. State Farm Ins. Co.*, 83Wn.2d 787 (1974)), negligence and bad faith are

13  "separate and distinct" causes of action, *Oregon Mut. Ins. Co. v. Seattle Collision Center, Inc.*,

14  C08-1670JLR, 2009 WL 3067036, at *12 (W.D. Wash. Sept. 18, 2009); *First State Ins. Co. v.*

15  *Kemper Nat'l Ins. Co.*, 94 Wn. App. 602, 612 (1999) (concluding that parties are entitled to

16  claims for both bad faith and negligence because "a party may fail to use ordinary care yet still

17  not act in bad faith").

18

19  //

20

21  //

22

23

24      [10] The undersigned's decision in *Jones v. State Farm Fire & Cas. Co.*, No. C17-1058RSL, 2018

25  WL 4281532, at *5 n.3 (W.D. Wash. Sept. 7, 2018), does not require a different result. The parties in
    that case failed to discuss the negligence claim in any depth, and the claim was dismissed without

26  prejudice to plaintiffs' ability to seek reconsideration and pursue the claim.

1    For all of the foregoing reasons, State Farm's motion for summary judgment (Dkt. # 55)

2  is DENIED.

3

4    Dated this 15th day of March, 2021.

5                                                    _Mark S Lasnik_

6                                                    Robert S. Lasnik
                                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26