1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                    )
BIJAN NIKFARD,                          )          No. C19-6001RSL
                                                    )
                          Plaintiff,        )
                                                    )
            v.                                  )
                                                    )          ORDER GRANTING EBERL'S
                                                    )          MOTION FOR
STATE FARM FIRE AND CASUALTY    )          SUMMARY JUDGMENT
COMPANY,                                 )
                                                    )
                          Defendant.       )
_____)

    This matter comes before the Court on "Defendant Eberl's Motion for Summary

Judgment." Dkt. # 40. Plaintiff asserts claims of bad faith, negligent claims handling, and

violations of the Washington Consumer Protection Act ("CPA") against the employer of a

claims adjuster involved in the handling of plaintiff's fire loss claim. Eberl Claims Service LLC

seeks summary dismissal of all of the claims against it on the ground that it had loaned, and State

Farm had borrowed, the employee at the time the activities giving rise to plaintiff's claims

occurred.

    Summary judgment is appropriate when, viewing the facts in the light most favorable to

the nonmoving party, there is no genuine issue of material fact that would preclude the entry of

judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial

responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v.*

ORDER GRANTING EBERL'S MOTION
FOR SUMMARY JUDGMENT

*Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

On March 10, 2019, there was a fire at a house owned by plaintiff and insured by State Farm. State Farm acknowledged that the loss was covered by the policy and assigned Bobby Greer, an adjuster, to handle plaintiff's claim. Mr. Greer worked on the claim from March 27, 2019, to the end of May 2019. Plaintiff alleges that his claim was handled negligently, in bad faith, and in violation of the governing insurance regulations.

Mr. Greer is employed by defendant Eberl and was made available to State Farm through

ORDER GRANTING EBERL'S MOTION
FOR SUMMARY JUDGMENT                    -2-

a "Master Independent Adjuster and Business Services Agreement" between the two companies. According to the agreement, Eberl (which is identified as SERVICE PROVIDER) "is in the business of providing independent claim adjusting services and other business services to clients such as STATE FARM through claim adjusters and others working as SERVICE PROVIDER's employees." Dkt. # 47-1 at 10. Eberl warrants that "it is the sole employer of all individuals providing Services under this Agreement ("PERSONNEL") so as to relieve STATE FARM of any responsibility or liability whatsoever for any claims arising from any assertion that SERVICE PROVIDER's workers are employees of STATE FARM." *Id.* at 11. Eberl agreed to "be solely responsible for the withholding and payment of all taxes (local, state and federal) including, but not limited to, federal and state income taxes, unemployment insurance taxes and social security taxes" and that its employees would not be "entitled to STATE FARM's employment status or benefits." *Id.* at 11-12.

Pursuant to the master agreement, the parties execute work orders defining the scope and duration of the services to be performed by Eberl employees in the field or in an office environment. *Id.* at 34 and 43. The master agreement obligates Eberl to provide a manager "to oversee delivery of Services under this Agreement" and to handle "the resolution and adjustment of all employment-related issues (e.g., work performance issues, absences and scheduling issues, and any other employment-related issues)." *Id*. at 12-13. If fifteen or more Eberl employees are assigned to work at a particular State Farm location, the manager is required to be present at that location. *Id*. at 13. All records, files, or documentation relating to claims made on State Farm insurance policies belong to State Farm, regardless whether the materials were created by an Eberl employee. *Id.* at 14.

State Farm retained for itself the rights to establish the qualifications that Eberl adjusters had to possess to perform services for State Farm and to request that any particular adjuster or group of adjusters not be assigned to State Farm. *Id.* at 16. Eberl, for its part, was obligated to

ORDER GRANTING EBERL'S MOTION
FOR SUMMARY JUDGMENT                    -3-

provide continuous and adequate supervision and training so that its adjusters competently provided the services they were assigned. *Id.* In a lengthy and detailed section of the agreement entitled "Hold Harmless; Indemnification," the parties generally divide their indemnification obligations along an administrative versus operational line. If a claim involves a wage or other employment-related issue, Eberl must defend and indemnify State Farm. If, however, the claim arises out of services provided to State Farm, no duty to defend or indemnify exists: State Farm may, in its discretion, choose to defend the claim. *Id.* at 18-20.

During the Rule 30(b)(6) deposition of Eberl's representative, William Douglas Edens described how the master agreement was put into practice. When State Farm needs temporary employees with an adjuster's skill set, it contacts Eberl. Dkt. # 41-1 at 28. Eberl then deploys adjusters who have the appropriate licensing and skills to satisfy State Farm's request. Once on assignment, Eberl makes sure its employees are putting in the hours required and filling out their time cards correctly. It also takes a "macro view" of their activities to ensure that State Farm is happy with their (and Eberl's services), such as "hey, you know, it looks like you've got quite a few . . . unreturned voice mails. You need to return voice mails." Dkt. # 46 at 6-7. Eberl tracks where their adjusters are deployed, whether they have been assigned to handle auto or property claims, and the hours they are billing. Dkt. # 41-1 at 9. If the adjuster is paid (and State Farm is billed) on an hourly basis, the employee lists the claims they handled on a given day. *Id*. How many claims an adjuster will handle while deployed, which claims they are assigned, and how they handle the claims is up to State Farm. *Id.* at 5 and 7. Once a deployment ends, the adjusters are evaluated by Eberl on how well they provided service to the customer, State Farm, noting any customer complaints or praise, lack of responsiveness, or errors that had to be corrected. Dkt. # 41-1 at 33. Mr. Edens specifically testified that no one at Eberl supervised Mr. Greer's claims handling conduct during the period in which he was working on the Nikfard claim. *Id.* at

7-8. Nor is there any indication that Eberl reviewed or evaluated his handling of the claim.

## DISCUSSION

Plaintiff seeks to hold Eberl vicariously liable for the wrongs allegedly caused by Mr. Greer under the rule of respondeat superior. An employer may, however, escape liability for damage or injuries caused by its employee if the allegedly wrongful conduct occurred while he or she was on loan to another, "special" employer. *See Stocker v. Shell Oil Co.*, 105 Wn.2d 546, 548 (1986); *Brown v. Labor Ready Nw., Inc.*, 113 Wn. App. 643, 647 (2002). When that happens, the employee is deemed the "borrowed servant" of the special employer. If injury flows from the performance of a task or transaction undertaken at the direction of the special employer, it is the special employer who can be held vicariously liable.

Plaintiff contends that the borrowed servant doctrine does not apply in this case because (a) the contracts governing the relationship between State Farm and Eberl specify that Eberl was Mr. Greer's sole employer and (b) Eberl retained control over numerous and critical aspects of Mr. Greer's employment. Both arguments were presented, among others, in *Wilcox v. Basehore*, 189 Wn. App. 63, 82-83 (2015), *aff'd*, 187 Wn.2d 772 (2017). With regards to the contract argument, the court determined that it is "the realities of the situation, not the language of contracts," that governs the borrowed servant analysis. As for the control issue, the court held that the borrowed servant rule can apply even if some aspects of the employee's situation is controlled by the general employer as long as the special employer controls and supervises the liability-generating tasks performed by the worker. *Id*. at 83-84.

> The relationship of master and servant may exist between the borrowed servant and the borrowing master with respect to some acts and not as to others. . . . The determining consideration in the relationship in the case of master and servant is . . . . whether or not there is control in fact or the right to control the servant's physical conduct in the performance of his duties. . . . Such control or right of control in the case of the loaned servant must create a relationship of subordination between the borrowing master and the borrowed servant rather than a relationship of

ORDER GRANTING EBERL'S MOTION
FOR SUMMARY JUDGMENT                    -5-

1    cooperation.

2    *Pichler v. Pac. Mech. Constructors*, 1 Wn. App. 447, 450 (1969) (internal citations omitted).

3        There is no disputed issue of fact here. State Farm controlled all aspects of Mr. Greer's

4    claims handling activities, and it was those activities that gave rise to plaintiff's claims. During

5    his deployment to State Farm, the work Mr. Greer performed was an integral part of State

6    Farm's business (*Pearson v. Arlington Dock Co.*, 111 Wash. 14, 22 (1920). Mr. Greer was not

7    simply cooperating with State Farm to accomplish a task jointly desired by State Farm and Eberl,

8    but rather was loaned to State Farm to perform whatever adjusting services it needed. *Pichler*, 1

9    Wn. App. at 450. State Farm assigned Mr. Greer the Nikfard claim, supervised his claim

10   handling activities, and ultimately replaced him with another adjuster. Eberl had no role in the

11   adjustment of plaintiff's claim: in fact, the only way Eberl would know that Mr. Greer was

12   working on the Nikfard claim is if he listed it on his time sheets for billing purposes.

13        Although the issue of control over a borrowed servant for the task or transaction that

14   caused the injury is generally a question of fact (*see Nyman v. MacRae Bros. Constr. Co.*, 69

15   Wn.2d 285, 288 (1966)), plaintiff has not attempted to show that Eberl directed or controlled Mr.

16   Greer's handling of his insurance claim. He instead argues that Eberl's other conduct as Mr.

17   Greer's employer, such as ensuring that Mr. Greer was a licensed and trained adjuster, handling

18   payroll while Mr. Greer was deployed with State Farm, and evaluating his customer service

19   when the deployment ended, exposes it to vicarious liability for the allegedly wrongful claim

20   handling. This argument fails as a matter of law. None of those activities gave rise to plaintiff's

21   claims. The uncontested facts show that the liability-generating conduct was entirely controlled

22   by State Farm, and, under the "borrowed servant" doctrine, Eberl cannot be held vicariously

23   liable for conduct over which it had no control.

24

25

26

ORDER GRANTING EBERL'S MOTION
FOR SUMMARY JUDGMENT                    -6-

1    For all of the foregoing reasons, Eberl's motion for summary judgment (Dkt. # 40) is

2  GRANTED.

3

4    Dated this 15th day of March, 2021.

5                                                     _Mr S Lasnik_

6                                                     Robert S. Lasnik
                                                     United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING EBERL'S MOTION
FOR SUMMARY JUDGMENT                    -7-