UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BIJAN NIKFARD, <br><br> Plaintiff, <br><br> v. <br><br> STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Defendant. | Case No. C19-6001RSL <br><br> MEMORANDUM OF DECISION |

This matter was heard by the Court in a bench trial commencing on April 5, 2021, and concluding on April 7, 2021. Plaintiff Bijan Nikfard filed this lawsuit seeking payments under a first-party property insurance policy issued by State Farm Fire and Casualty Company. Plaintiff asserted breach of contract, bad faith, and statutory claims against the insurer, seeking an award of damages as well as declaratory and injunctive relief.

**FINDINGS OF FACT**

By a preponderance of the evidence, the Court finds as follows:

On March 10, 2019, a fire severely damaged the first floor living space of a rental house owned by plaintiff. Prior to the fire, the home was in need of significant repairs, with two leaks in the roof and a dilapidated deck that was unsafe and unusable. The fire suppression efforts involved cutting a large hole in the roof and a massive influx of water.

Plaintiff (or his representative, his brother George Nikfard) timely notified State

Farm of the fire.[1] State Farm acknowledged that the loss was covered by the policy and requested that the insured take steps to protect the property from further damage. Mr. Nikfard had fencing installed around the house, boarded up the blown out windows and front door, and attempted to keep water out of the holes in the roof with tarps. State Farm recommended KenCade Construction as a general contractor specializing in insurance restoration and, with Mr. Nikfard's approval, sent KenCade to the house to prepare a repair estimate. Using a software program called Xactimate, KenCade developed a very detailed, but preliminary, estimate of $149,900.36 to restore the property. KenCade was never asked to prepare a formal bid for the Nikfard project and therefore never offered to be bound to do the work for $149,900.36.

Plaintiff obtained a competing repair estimate of $269,850.00 plus tax from Ivan's Remodeling. The estimate contained prices for each line item, such as "Permits. $4,300.00" and "Siding. $16,700.00," but did not contain the level of detail regarding materials, number of units, and price per unit as the KenCade estimate. Ivan's offered to do the work for the quoted price, but State Farm rejected the bid. The adjuster who was handling the claim, Bobby Greer, deemed certain line items to be upgrades not covered by the policy and/or not necessary to repair the fire damage. Mr. Nikfard requested clarification regarding which line items, in whole or in part, State Farm believed were unrelated to the fire or otherwise not covered by the policy. Mr. Greer, convinced that his conversation with Mr. Nikfard regarding the Ivan's bid was sufficient, did not provide the requested clarification.

In mid-May 2019, State Farm sent plaintiff its estimate of the covered repair costs, largely adopting the KenCade estimate, along with a payment of $113,167.93. State Farm also promised to disburse another $46,848.09 if repairs were actually undertaken and

---

[1] For purposes of this decision, the Court uses the term "plaintiff" to refer to Bijan Nikfard and "Mr. Nikfard" to refer to George Nikfard.

MEMORANDUM OF DECISION - 2

completed within the time allowed by the policy. Plaintiff was told that if he obtained a repair estimate that exceeded State Farm's estimate, he should contact State Farm before authorizing or beginning work. In subsequent correspondence, State Farm explained how the replacement cost coverage works, noting that if additional damage were discovered during demolition or repair, the contractor could request additional authorization for repairs from State Farm. Mr. Nikfard requested a copy of his policy.

A new adjuster, Kellie Kleinschmidt, was assigned to the case at this point, the fourth since State Farm was first notified of the claim.[2] A review of the claim file made Ms. Kleinschmidt aware that Mr. Nikfard disagreed with the KenCade estimate, that he was seeking a meeting to discuss State Farm's objections to the Ivan's estimate in the hopes of reaching an agreement that would enable him to proceed with the repairs, and that he had requested a copy of the insurance policy. After consulting with Mr. Greer, Ms. Kleinschmidt was apparently convinced that the Ivan's bid had been given all the attention it was due and that there would be no benefit to meeting with the contractor. Ms. Kleinschmidt also believed that Mr. Nikfard had been given a copy of the policy as requested. When Mr. Nikfard notified State Farm that he intended to move forward with the repairs based on the Ivan's Remodeling estimate, Ms. Kleinschmidt limited her response to introducing herself as the new adjuster and requesting that Mr. Nikfard forward a signed copy of the Ivan's contract so that she could release the rest of the previously-authorized funds.

Mr. Nikfard persisted, however, seeking clarification regarding what the

---

[2] When the claim was first made, a third-party adjuster was handling Kellie Kleinschmidt's claim files while she was out on maternity leave. That adjuster had a medical emergency, however, and the file was transferred to State Farm adjuster Necia Riddell, who made first contact with George Nikfard. The claim file then transitioned to another third-party adjuster, Bobby Greer, who conferred with George Nikfard regarding the Ivan's estimate, authorized the May payment, and requested a copy of the policy from underwriting. When Kellie Kleinschmidt returned to work, the file transitioned to her.

MEMORANDUM OF DECISION - 3

replacement cost benefits payment would cover, whether he was authorized to contract with Ivan's for an amount that was approximately $100,000 above the State Farm estimate, and, if not, whether State Farm would meet with him and his contractor to go through the anticipated costs before he signed a repair contract. Mr. Nikfard also pointed out that the unoccupied house was now infested with rodents and inquired how to seek authorization and payment for additional expenses related to its deteriorating condition. He requested a response by the end of the day. The next evening, Mr. Nikfard again contacted State Farm. He confirmed that he intended to pay for any work that was not related to the fire out-of-pocket, but asserted that the State Farm estimate and the Ivan's bid diverged so greatly with regards to covered activities/expenses that he needed a meeting to determine how to proceed. Mr. Nikfard argued that State Farm's estimate was unrealistically low. There is no indication that State Farm ever responded. At trial, it became very clear that this was an error: further discussion between State Farm and plaintiff's contractor was a necessary step in reconciling the differences between the bids and getting the demolition and renovation underway in a timely manner.[3] As it was, Mr. Nikfard did not sign a contract with Ivan's Remodeling, and the water-logged, rodent-infested house continued to deteriorate.

       Plaintiff filed this lawsuit on September 17, 2019, six months after the fire. After obtaining assistance from an industrial hygienist regarding asbestos, mold, and smoke sealing, a structural engineer regarding the scope of work (including any required code upgrades), an architect, and a water loss mitigation specialist, Mr. Nikfard signed a

---

      [3] In its rebuttal closing argument, State Farm argues that "[t]he one-page Ivan's estimate did not have sufficient detail to allow for reconciliation with the State Farm estimate" because it "did not describe the repairs with any specificity or break them down by room" and "included items unrelated to the fire" or "not present in the house." Dkt. # 106 at 2. State Farm misses the point: if it needed additional information from the contractor in order to understand why the two estimates were so far apart, it should have made the effort to obtain that information.

MEMORANDUM OF DECISION - 4

contract with Charter Construction, Inc. to restore the home - in keeping with the experts' recommendations - for $228,563.91. Mr. Nikfard also engaged Charter Construction to make $11,432.34 in upgrades to the property that were unrelated to the fire loss and for which he is not seeking coverage.

Upon receipt of the Charter Construction contract, State Farm made an additional payment of $60,904.01 to cover the replacement cost benefits (based on its original estimate), material costs for laminate flooring, permit fees, and architect and engineering charges that State Farm deemed unrelated to litigation. State Farm has declined to pay the water loss mitigation invoice, investigative costs, and the contractor charges in excess of its original estimate. State Farm has also limited certain payments, such as lost rents and reimbursement for fencing rental, on the ground that plaintiff should have completed the repairs more quickly. At the time of trial, the dwelling was still undergoing repair and renovation.

With one exception, all of the consultations and expenditures incurred by plaintiff were reasonable and necessary to the protection, investigation, demolition, repair, and/or replacement of the insured property given the nature of the loss, the length of time the property had been water-logged, and the changes in code requirements. Plaintiff cannot, however, recover the $3,815.71 budgeted for building a new deck. The original deck was non-functional at the time of the fire, and State Farm is not obligated to replace something that had zero value.

The Nikfard insurance policy included the following relevant coverages:

| | |
|---|---|
| Investigative Costs | does not reduce policy limits |
| Dwelling Repairs | $299,200 |
| Code Upgrades | $74,800 (25% of the Dwelling Repairs Coverage) |
| Personal Property | $18,500 |

| | |
|---|---|
| Debris Removal | $14,960 (5% of the Dwelling Repairs Coverage)[4] |
| Lost Rents | 12 months |

Plaintiff has spent $9,883.95 on industrial hygiene and engineering services to investigate the scope of the loss and repairs.[5] He has also spent or contracted to spend another $322,400.54 in the demolition and repair of the dwelling. After subtracting the $500 deductible and the unrecoverable costs associated with the deck, plaintiff's covered demolition and repair expenditures equal $318,084.83. Because that amount exceeds the Dwelling Repairs coverage limit, the 5% debris removal coverage comes into play. The Dwelling Repairs and Debris Removal coverages, combined, equal $314,160.00. The difference of $3,924.83 falls easily within the Code Upgrades coverage because the majority of the siding costs and the firesafing in the attic were necessary code upgrades that cost at least $10,000. Finally, plaintiff has lost $700 per month in rent since the fire occurred.

## CONCLUSIONS OF LAW

### A. Breach of Contract

All told, plaintiff has a contractual claim for reimbursement of $327,968.78, including investigative expenses, demolition and repair expenses, and lost rents that were proximately caused by the covered fire loss. Plaintiff took reasonable steps to protect the damaged property, as directed by State Farm, and his reluctance to incur or contractually bind himself to additional expenses without knowing whether State Farm would reimburse him was not a breach that would relieve the insurer of liability for subsequent loss. State Farm has paid a total of $174,071.94 under the various coverages. Plaintiff is

---

[4] The additional 5% coverage for debris removal applies only if the amount payable under the policy plus debris removal exceeds the policy limit for Dwelling Repairs.

[5] Expenses related solely to litigation are not covered and have been deducted.

therefore entitled to an award of $153,896.84 on his breach of contract claim.

**B. Bad Faith**

To prove the tort of bad faith in insurance claims handling, the insured must show that the insurer acted unreasonably, frivolously, or without foundation. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485 (2003). The Court will assume, for purposes of this claim, that State Farm acted unreasonably in failing to meet with plaintiff's contractor to reconcile the differences in State Farm's reconstruction estimate and that put forward by Ivan's Remodeling. Plaintiff has already been awarded the economic damages arising from that failure under his breach of contract claim and is not entitled to a double recovery. Bad faith is a tort claim, however, and plaintiff also seeks an award of general damages for the emotional distress arising from State Farm's conduct. Plaintiff, a businessman, held the subject house as a rental property. He had not visited the property in years, leaving it to the long-term tenant to do any necessary repairs and maintenance in exchange for a reduced rent. Plaintiff had no discernable attachment to the house, and he left the insurance negotiations entirely to his brother, George Nikfard. Plaintiff has not shown emotional distress or that he is otherwise entitled to an award of general damages.

**C. Insurance Fair Conduct Act ("IFCA")**

IFCA authorizes "first party claimant[s] to a policy of insurance who [are] unreasonably denied a claim for coverage or payment of benefits by an insurer [to] bring an action in superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." RCW 48.30.015(1). State Farm neither denied plaintiff's claim for coverage nor denied the payment of any benefits due under the policy. Rather, State Farm promptly acknowledged coverage and relied on an estimate from a licensed general contractor when offering a payment of over $150,000 with a promise of more funds if the contractor

discovered additional damage during demolition/construction. Although there was a significant dispute regarding the valuation of the claim, State Farm's offer was reasonable in light of what was then known, and it increased its offer of payment as more information was obtained regarding costs and expenses. Plaintiff was not unreasonably denied payment of the benefits afforded by his policy for purposes of an IFCA claim.

**D. Consumer Protection Act (CPA)**

The elements of a CPA claim are (1) an unfair or deceptive act or practice (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85 (1986). Proof of a violation of the regulatory provisions of WAC Ch. 284-30 *et seq*. establishes the first two elements of a CPA claim. In addition, "CPA claims 'alleging unfair insurance claims practices meet the public interest element because RCW 48.01.030 declares that the 'business of insurance is one affected by the public interest.'" *Bancroft v. Minnesota Life Ins. Co.*, 329 F. Supp. 3d 1236, 1259 (W.D. Wash. 2018), *aff'd*, 783 F. App'x 763 (9th Cir. 2019) (internal citation and quotation marks omitted).

State Farm's continuing reliance on the KenCade estimate and subsequent refusal to meet and confer with plaintiff's contractor resulted in an inadequate investigation of the scope of the loss and an inaccurate determination of the actual cash value in violation of WAC 284-30-330(4) and WAC 284-30-380(7), respectively. Ultimately, State Farm offered to pay slightly more than half of the amounts due under the policy, compelling plaintiff to initiate litigation in order to recover the rest in violation of WAC 284-30-330(7). The legislature has declared that this conduct impacts the public interest, and plaintiff has shown that the violations caused injury to his business or property. In such circumstances, the CPA authorizes a civil action to enjoin further violations and to

recover actual damages, the costs of the suit, and reasonable attorney's fees. RCW 19.86.090. "In addition, the court may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained: PROVIDED, That such increased damage award for violation of RCW 19.86.020 may not exceed twenty-five thousand dollars." *Id.*

Plaintiff's claim for actual damages under the CPA is duplicative of the remedy afforded on his breach of contract claim: he is not entitled to a double recovery of that amount. Nor has he stated what sort of injunctive relief would be appropriate in the absence of evidence suggesting that the regulatory violations that occurred here are the result of a pattern or practice that could be altered going forward.[6] To the contrary, the outcome here appears to have been a function of unique circumstances - primarily the assignment of four different adjusters to the case and the quick involvement of lawyers on both sides - that cannot be suitably addressed through injunctive relief. For similar reasons, the Court finds that neither punishment nor deterrence justifies an award of treble damages in this case. Plaintiff is, however, entitled to an award of costs and reasonable attorney's fees.

//

//

//

---

[6] It appears that plaintiff has abandoned his claims for declaratory and injunctive relief: neither is mentioned in his closing memoranda.

For all of the foregoing reasons, the Court finds that State Farm is liable to plaintiff for damages in the amount of $153,896.84, plus costs and reasonable attorney's fees. Plaintiff shall, within twenty days of the date of this Order, submit a properly supported petition for fees and costs, noting the petition for consideration on the third Friday after filing.

Dated this 28th day of April, 2021.

Robert S. Lasnik
United States District Judge